UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

               Plaintiff,

         v.

RANDY ZACHERLE,

               Defendant.

No. CR-06-0100-FVS

ORDER RE: PRETRIAL MOTIONS

**THIS MATTER** came before the Court for a pretrial conference on November 12, 2008.  Assistant United States Attorney Stephanie J. Lister appeared on behalf of the United States.  Defendant was present and represented by Jeffrey Scott Niesen.  This order is intended to memorialize and supplement the Court's oral ruling.

Defendant filed multiple pretrial motions which were addressed by the Court at the pretrial conference.  Defendant requested the following relief:

1.    An order suppressing all evidence seized from the residence located on Highway 97 in Okanagan, Washington on February 17, 2006.  (Ct. Rec. 176; 38).

2.    An order consolidating the counts listed in the superseding indictment.  (Ct. Rec. 178).

3.    An order dismissing the superseding indictment due to "triple Jeopardy."  (Ct. Rec. 180; 82).

4.    An order granting Defendant's motion in limine to limit testimony, evidence and other matters at Defendant's trial. (Ct. Rec. 182; 97).

ORDER RE: PRETRIAL MOTIONS - 1

5.  An order granting Defendant's request to explain to the jury differences between tribal court and federal court proceedings.  (Ct. Rec. 184; 94).

6.  An order granting Defendant's request for the jury to view Defendant's leg and knee scars.  (Ct. Rec. 186; 98).

7.  An order granting Defendant's request for additional discovery.  (Ct. Rec. 188).

8.  An order granting Defendant's request to admit verbatim transcripts of prior state and tribal trials.  (Ct. Rec. 190; 96).

9.  An order granting Defendant's motion in limine with respect to the videotape, a shocking device and Defendant's criminal record.  (Ct. Rec. 192).

10. An order granting Defendant's motion in limine with respect to the government's handwriting expert, Peter J. Belcastro, Jr.  (Ct. Rec. 195).

11. An order granting Defendant's motion in limine to prohibit the government from showing the jury any images of child pornography.  (Ct. Rec. 198).

The government also filed a pretrial motion.  The government requested that Defendant provide a written summary of its expert witness, Marcus Lawson (computer and forensic evidence expert).  (Ct. Rec. 209).

**BACKGROUND**

**A.   The Warrant**

On January 27, 2006, at approximately 12:45 a.m., Deputy Hawley of the Okanogan County Sheriff's office observed a 1989 Blue Buick regal registered to Tami and Randy Zacherle parked on Sandflat Road. Deputy Hawley observed a computer tower and a Gateway computer book inside the vehicle.  He contacted Tami Zacherle, who informed him that her husband, Defendant, was the last person to drive the vehicle.  She ///

ORDER RE: PRETRIAL MOTIONS - 2

also advised Deputy Hawley that Defendant "had an incident" with his young niece who lived within half a mile of the vehicle's location.

Deputy Hawley proceeded to the niece's residence. Ms. Reed, the niece's mother, informed Deputy Hawley that her 14-year-old daughter, B.R., had awoken to discover a man lying on her bedroom floor. The man fled the scene when someone knocked on B.R.'s bedroom door. Ms. Reed directed Deputy Hawley to an address on Highway 97 owned by Shirley Zacherle, Defendant's mother. Ms. Reed indicated that Defendant was staying there. Upon arriving at the Highway 97 residence, Deputy Hawley made contact with Defendant and arrested him for first degree criminal trespass. Deputy Hawley observed Defendant's car, which he had seen earlier parked near B.R.'s home. Inside the car, Deputy Hawley observed a computer tower and an electrical shocking device.

On February 6, 2006, the Federal Bureau of Investigation was contacted by Rachel Graves. Ms. Graves recounted that Tami Zacherle, Defendant's wife, had shown her a video tape and a number of 3.5 inch computer disks that contained images of naked children. According to Tami, Ms. Graves said, the images belonged to Defendant and Defendant had recorded the video, which depicted his niece, B.R. Tami also told Ms. Graves that Defendant could be heard masturbating in the background of the video.

On February 13, 2006, Tami reported Defendant as a missing person. She advised the FBI that she had found images of child pornography at the residence she shared with Defendant and in his car from September 2004 to June of 2005. She also provided the FBI with

ORDER RE: PRETRIAL MOTIONS - 3

two hard drives and over 100 computer disks containing images of child pornography.  She further told the FBI that her husband had a hard drive with him containing additional images.

On February 14, 2006, a detective with the Okanogan County Sheriff's office photographed a vehicle that resembled the vehicle of Defendant parked outside the residence on Highway 97.  The same day, a Colville Tribal Police Detective observed the same car in the driveway.  There was no computer in the car at that time.  The tribal officer eventually made contact with Defendant's brother, who would neither admit nor deny that Defendant had been staying at the house on Highway 97.

The FBI again spoke with Tami on February 15, 2006.  She indicated that her husband stayed with his mother whenever they had marital difficulties.  She further indicated that his mother resided on Highway 97.

On February 17, 2006, Magistrate Judge Imbrogno issued a warrant based on the affidavit of Special Agent Frank Harrill.  The warrant authorized the FBI to search the Highway 97 residence for evidence of possession of child pornography.  The warrant incorporated by reference Attachment A, a description of the Highway 97 residence, and Attachment B, a description of the items to be seized.

**B.   The Search**

On February 17, 2006, FBI Special Agent Wesley Floyd, accompanied by several tribal officers, executed the search warrant at the Highway 97 residence.  The officers made contact with Defendant and his father, Larry Zacherle.  The officers advised that the purpose of the

ORDER RE: PRETRIAL MOTIONS - 4

search was to find a "computer tower CPU" that had been brought from Defendant's residence in Nespelem.  Defendant identified this computer as a Dell desktop, 2100 CPU, located on a table in the front room of the residence.  The officers seized the Dell.

The officers also observed an HP computer next to the Dell that appeared to be connected to the Internet.  With Defendant's consent, the officers ran the PreSearch program on the HP, but the program did not find any images of child pornography.

Defendant was arrested and taken to jail.  He asked Agent Floyd to return certain personal items to the Highway 97 residence.  Agent Floyd returned the items to the Highway 97 residence and made contact with Larry Zacherle.  Agent Floyd then seized the HP, allegedly with Larry Zacherle's consent.

Defendant was subsequently charged with Possession and Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(5)(B),(2)(A).

**DISCUSSION**

**I.   Motion to Suppress (Ct. Rec. 176; 38)**

Defendant moved the Court for an order suppressing all evidence seized from the residence located on Highway 97 in Okanagan, Washington on February 17, 2006.  (Ct. Rec. 176; Ct. Rec. 38).  The Court addressed Defendant's motion to suppress by separate order.

**II.  Motion to Consolidate Counts (Ct. Rec. 178)**

Defendant asserts that the four main counts in the Superseding Indictment are essentially for Defendant's alleged receipt and possession of child pornography during the period from May 14, 2002, through November 8, 2007.  (Ct. Rec. 178 at 4).  Defendant argues that

ORDER RE: PRETRIAL MOTIONS - 5

only one count of possession and one count of receipt is appropriate, and, because possession is a lesser included offense of receipt, the government must dismiss one or the other of these counts.  *Id*. Defendant contends, as a result, that he should proceed to trial on just one count, not four, for his alleged conduct.  *Id*.

The government argues that the Superseding Indictment properly charges Defendant for his conduct and is not multiplicitous.  (Ct. Rec. 203 at 2-5).  The government explains that Count 1 is based on child pornography found on computer disks and Defendant's computer, Count 2 is based on child pornography found on approximately 58 computer disks belonging to Defendant, and Counts 3 and 4 relate to 175 computer disks found by a farmer in a field near Defendant's residence.  (Ct. Rec. 203 at 3).  The government argues that the receipt counts have different dates than the possession counts, and the possession and receipt charges are based on evidence found in separate locations and discovered at different times.  (Ct. Rec. 203 at 4).

In addition to a forfeiture of items count (Count 5), the Superseding Indictment alleges the following:

1.   On or about February 16, 2003, through on or about March 5, 2005, Defendant knowingly received child pornography.

2.   On or about March 6, 2005, through on or about February 13, 2006, Defendant knowingly possessed child pornography.

3.   On or about May 14, 2002, through on or about October 22, 2005, Defendant knowingly received child pornography.

4.   On or about October 23, 2005, through on or about November 8, 2007, Defendant knowingly possessed child pornography.

///

ORDER RE: PRETRIAL MOTIONS - 6

(Ct. Rec. 124).  There is certainly overlap with respect to the allegations in the Superseding Indictment of receipt (on or about February 16, 2003, through on or about March 5, 2005, and on or about May 14, 2002, through on or about October 22, 2005) and of possession (on or about March 6, 2005, through on or about February 13, 2006, and on or about October 23, 2005, through on or about November 8, 2007).  It appears the Superseding Indictment essentially alleges that Defendant both received and possessed child pornography from the period of May 14, 2002,[1] to November 8, 2007.

When a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other.  *Rutledge v. United States,* 517 U.S. 292, 297, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (Court employed the *Blockburger* test to determine whether one offense is a lesser included offense of another).  If two different criminal statutory provisions indeed punish the same offense or one is a lesser included offense of the other, then conviction under both is presumed to violate congressional intent.  *Missouri v. Hunter,* 459 U.S. 359, 366-67, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

///

---

[1]Although the Superseding Indictment alleges that Defendant possessed child pornography at the earliest March 6, 2005, the Superseding Indictment alleges that Defendant received child pornography as early as May 14, 2002.  (Ct. Rec. 124).  It is impossible to receive child pornography without, at least at the very instant of receipt, also possessing it.  *See, U.S. v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008).

ORDER RE: PRETRIAL MOTIONS - 7

The Ninth Circuit has determined that, under the *Blockburger* test, the offense of possessing child pornography is a lesser included offense of the receipt of child pornography. *U.S. v. Davenport*, 519 F.3d 940, 947 (9th Cir. 2008). Accordingly, "while the government may have been within constitutional boundaries to include both offenses in the indictment" entering judgment against Defendant on both counts would be multiplicitous and in violation of the Fifth Amendment's prohibition of double jeopardy. *Davenport*, 519 F.3d at 944.

Because the offense of possessing child pornography is a lesser included offense of the receipt of child pornography, the government may not punish Defendant for both offenses. Nevertheless, the government may include both offenses in the indictment and may continue to prosecute Defendant for both offenses through trial. *Davenport*, 519 F.3d at 944; *See, Ball v. United States*, 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). It is the punishment, not the prosecution, that would violate Defendant's Fifth Amendment right to be free from being punished twice for a single criminal offense.

While the Court herein denies Defendant's motion to consolidate counts (Ct. Rec. 178), the government should be mindful that there may be double jeopardy implications by continuing to proceed in the current fashion.

**III.  Motion to Dismiss (Ct. Rec. 180; 82)**

Defendant requests an order dismissing the Superseding Indictment due to "Triple Jeopardy." (Ct. Rec. 180; 82). Defendant argues that the instant accusations arise out of the identical allegations of

///

ORDER RE: PRETRIAL MOTIONS - 8

facts for which he has already faced charges in Tribal Court and then State Court. (Ct. Rec. 82 at 1).

The Fifth Amendment of the United States Constitution provides, in part, that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The amendment protects a criminal defendant against multiple punishments or subsequent prosecutions for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229-230 (1994). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires a proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (holding that two offenses were committed despite a single act resulting in the violation of two sections of a statute). As such, the Double Jeopardy clause as interpreted by *Blockburger* allows the prosecution of an offense arising out of the same transaction which requires at least one proof of fact, or element, that is different from those elements required by another charged offense. *Id.*

On May 17, 2006, Defendant was found guilty in Tribal Court of Sexual Exploitation of a Minor Child. (Ct. Rec. 82, Exh. 12-16). The elements of a charge of Sexual Exploitation of a Minor Child are: 1) compelling a minor by threat or force to engage in sexually explicit conduct; OR aiding, inviting, employing, or otherwise causing a minor to engage in sexually explicit conduct; OR being a person with custody or control over a minor and aiding, inviting, employing, or otherwise

ORDER RE: PRETRIAL MOTIONS - 9

causing a minor to engage in sexually explicit conduct, 2) for the purpose of his/her or another's sexual gratification, monetary or other benefit.

On May 18, 2006, Defendant was charged by Information in Okanogan County Superior Court with Voyeurism, in violation of RCW 9A.44.115(2)(a), and Residential Burglary, in violation of RCW 9A.52.025(1).  (Ct. Rec. 82, Exh. 20-23).  In Washington, the elements of a charge of Voyeurism are: 1) knowingly viewing, photographing or filming a second person, 2) without his/her knowledge and consent, 3) for the purpose of arousing and gratifying the sexual desire of any person, 4) while the second person was in a place where he/she had a reasonable expectation of privacy OR that the intimate areas of the second person were areas that are covered by clothing and intended to be protected from public view.  RCW 9A.44.115.  In Washington, the elements of a charge of Residential Burglary are: 1) entering or remaining unlawfully in a dwelling of another, 2) with intent to commit a crime against a person or property therein, 3) in the State of Washington.  RCW 9A.52.025(1).  On February 8, 2007, a jury found Defendant not guilty of both counts.  (Ct. Rec. 82, Exh. 24).

Here, Defendant has been charged with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and Receiving Child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A).  The elements of a charge of Possession of Child Pornography are: 1) knowingly possessing material which Defendant knew contained visual depiction(s) of a minor engaged in sexually explicit conduct, 2) that Defendant knew each visual depiction contained in the material was of

ORDER RE: PRETRIAL MOTIONS - 10

a minor engaged in sexually explicit conduct, 3) that the material containing the visual depictions were produced using such materials that had been transported in interstate or foreign commerce.  18 U.S.C. § 2252A(a)(5)(B).  The elements of Receiving Child pornography are: 1) knowingly receiving an item containing material which Defendant knew contained visual depiction(s) of a minor engaged in sexually explicit conduct, 2) that Defendant knew each visual depiction was of a minor engaging in sexually explicit conduct, and 3) that the material containing the visual depictions were produced using such materials that had been transported in interstate or foreign commerce.  18 U.S.C. § 2252A(a)(2)(A).

As discussed above, the Double Jeopardy clause as interpreted by *Blockburger* allows the prosecution of an offense arising out of the same transaction if at least one proof of fact, or element, is different from the elements of another charged offense.  *Blockburger*, 284 U.S. at 304.  A comparison of the charges brought by the Tribal, State, and Federal Courts shows that the federal charges do not constitute double or "triple" jeopardy under the *Blockburger* test because the federal offenses contain several facts of proof which are either different or missing in the tribal and state charges.  *See, supra*.  Defendant's motion to dismiss (Ct. Rec. 180; 82) is therefore denied.

**IV.  Motion in Limine (Ct. Rec. 182; 97)**

Defendant's motion in limine (Ct. Rec. 182; 97) requests that the Court limit testimony, evidence and other matters at Defendant's trial.  Defendant's motion essentially requests that the government be

ORDER RE: PRETRIAL MOTIONS - 11

restrained from violating the federal rules of evidence, the federal rules of criminal procedure and case law interpreting those rules. Defendant specifically requests that the government be precluded from presenting the following twenty-five items of evidence:

1.  Uncharged alleged offenses or allegations of domestic violence;

2.  Items seized by search warrants not relevant to the charges in the Superseding Indictment;

3.  Opinion evidence without foundation;

4.  Defendant's criminal convictions;

5.  Non-disclosed evidence which the government intends to use to show motive, intent, plan or scheme pursuant to Fed. R. Evid. 404(b) or which the government failed to disclose in response to the Court's Discovery Order and Defendant's discovery requests;

6.  Plea bargaining endeavors or negotiations;

7.  Any pre-trial motions;

8.  Any reference to usage of drugs by Defendant;

9.  Characterization of Defendant as dangerous, sinister and undesirable and therefore more likely to have committed the crimes charged;

10. False, misleading or inadmissible evidence;

11. Perjured testimony;

12. Questioning a witness to characterize the testimony of a defense witness as "lies";

13. Attack or belittling of defense counsel;

14. Stressing the prestige of the prosecutorial office;

15. Suggestion that cooperation agreement with witnesses allow the prosecutor to know what the truth is;

16. Reference to matters outside the record or insinuation that issues of fact have already been decided;

///

ORDER RE: PRETRIAL MOTIONS - 12

17. Lessening the jurors' sense of responsibility by making inappropriate comments;

18. Impermissible remarks including reference to the possibility of mitigation of punishment;

19. Re-created documents that do not comport with originals;

20. Secondary evidence;

21. Any evidence in violation of Fed. R. Evid. 1004, 1003, 1002, 1001, 901, 403 and/or 404(b);

22. Any speculative testimony;

23. Any testimony in violation of *Crawford v. Washington*, 124 S.Ct. 1374;

24. Letters to police or any other official that may accuse someone of wrongdoing; and

25. Any reports made for the purpose of producing evidence for litigation.

(Ct. Rec. 97).

The Court would expect the government to proceed in a manner consistent with the federal rules. In fact, the government has responded that it "intends to conduct the trial in a professional manner, following the Fed. Rules of Evidence." (Ct. Rec. 203 at 7). Defendant's Motion in Limine (Ct. Rec. 182; 97) is granted to the extent provided by the Federal Rules of Evidence, the Federal Rules of Criminal Procedure and case law interpreting those rules.

**V. Motion to Instruct Jury (Ct. Rec. 184; 94)**

Defendant contends that the tribal trial procedures leading to his conviction varied constitutionally from federal courts. (Ct. Rec. 94). Defendant therefore moves the Court for authorization for witness testimony at trial or a jury instruction in order to explain to the jury tribal court variances from federal court procedures.

ORDER RE: PRETRIAL MOTIONS - 13

(Ct. Rec. 184; 94).  Defendant requests that an attorney knowledgeable in tribal law testify as to constitutional deficiencies in the tribal court proceedings or that a jury instruction indicating the same be presented to the jury.  (Ct. Rec. 94 at 4).

Defendant has not alleged or demonstrated how his proceedings in the tribal court were specifically unconstitutional or out of compliance with the rules of evidence.  Without more, the Court does not believe that an explanatory jury instruction and/or testimony at trial on the subject is necessary.  In any event, the government indicates that it "does not intend to present evidence of Defendant's prior 2006 tribal conviction for indecent liberties thus, such testimony or jury instruction is not necessary."  (Ct. Rec. 203 at 23).  Accordingly, Defendant's motion to instruct jury regarding tribal court conviction (Ct. Rec. 184; 94) is denied.

**VI.  Motion for Jury View (Ct. Rec. 186; 98)**

Defendant requests that the jury be permitted to view Defendant's leg and knee scars resulting from old surgeries.  (Ct. Rec. 186; 98).

It is alleged that the faceless videographer in the videotape of B.R. is Defendant.  Apparently, the videographer's legs are displayed on the video, and the legs displayed on the video do not have scars. Defendant contends that he has scars on his legs and that testimony will prove the scars are old.  Defendant, therefore, requests that the jury be permitted to view his leg scars to demonstrate that he is not the videographer depicted in the video.  Defendant requests he be allowed to wear shorts to one day of trial and display his legs and scars to the jury.  He asserts that this would not affect trial

ORDER RE: PRETRIAL MOTIONS - 14

orderliness, would not be time consuming and would not confuse or mislead the jury.  (Ct. Rec. 98).

The government responds that a jury view is not necessary because the 2004 videotape is irrelevant to the pending federal charges and the government does not intend to present any evidence of the videotape.  (Ct. Rec. 203).  Since the government indicates it does not plan to introduce the videotape, Defendant's leg and knee scars are irrelevant and a jury view of Defendant's legs is unnecessary. Defendant's motion for the jury to view Defendant's leg and knee scars (Ct. Rec. 186; 98) is thus denied, without prejudice.

**VII.  Motion for Discovery (Ct. Rec. 188)**

Defendant requests supplemental discovery.  (Ct. Rec. 188). Specifically, Defendant requests (1) the production of a list of the government's anticipated witnesses and contact data and timely access for defense interviews of those witnesses; and (2) the particularized bases and reasons for the handwriting expert's report furnished by the government on January 8, 2008, or any other such report prepared in anticipation of trial.  (Ct. Rec. 188).

The government indicates it will voluntarily disclose its witness list simultaneously with Defendant's witness list seven days before trial.  (Ct. Rec. 203 at 23).  The Court finds that the government shall disclose a list of witnesses whom the government expects to call in its case in chief **ten (10) days** prior to trial.  The Court indicates, however, that it may not compel government witnesses to be interviewed by defense counsel.

///

ORDER RE: PRETRIAL MOTIONS - 15

With respect to Defendant's request for the report of the government's handwriting expert, the government indicates it has already provided all copies of Mr. Belcastro's reports in discovery. (Ct. Rec. 203 at 23).  The government additionally supplemented the record with materials regarding the government's handwriting expert on November 13, 2008.  (Ct. Rec. 213).  The Court finds that the government has provided the requested reports and complied with Fed. R. Crim. P. 16(a)(1).  Defendant's request for the reports of the government's handwriting expert is thus denied as moot.  Accordingly, Defendant's motion for supplemental discovery (Ct. Rec. 188) is granted in part and denied in part.

**VIII.  Motion to Admit Transcripts (Ct. Rec. 190; 96)**

Defendant requests that certain portions of prior tribal and state trial transcripts be deemed admissible in the trial in this case.  (Ct. Rec. 190; 96).  Defendant asserts that each prior proceeding arose out of common overlapping allegations which are the subject of law enforcement reports underlying the instant federal prosecution and the facts presented in the Superseding Indictment. (Ct. Rec. 96).  Defendant asserts he anticipates that witnesses common to the prior two proceedings will participate in the trial in this case.  The government responds that transcripts from these prior hearings are irrelevant to the charges contained in the Superseding Indictment.  (Ct. Rec. 203 at 22).

The Court finds that no basis exists for the admission of the tribal and state trial transcripts at the trial in this case. Nevertheless, the parties may use said transcripts for impeachment

purposes to the extent they are relevant and otherwise comport with the federal rules.  Defendant's motion to admit verbatim transcripts of prior trials (Ct. Rec. 190; 96) is denied in part.

## IX.  Motion in Limine (Ct. Rec. 192)

Defendant requests that the government be prohibited from alluding to or mentioning (1) Defendant's alleged possession and authorship of the videotape of B.R.; (2) Defendant's possession of a handheld electrical shocking device; and (3) any aspect of Defendant's criminal record, specifically the fact that he was found not guilty by reason of insanity of attempted murder and related charges over 20 years ago.  (Ct. Rec. 192).

Defendant contends that he is on trial for allegedly receiving and possessing child pornography obtained by and through a computer and stored on various storage media, not for either possessing or making the videotape or possessing a handheld electrical shocking device.  (Ct. Rec. 192 at 3).

### A.  Videotape of B.R.

Defendant argues that the videotape is not only irrelevant but is totally unreliable.  He asserts that Tami Zacherle fully recanted her testimony in writing that it was Defendant who made the videotape and appeared therein.  In any event, proof of making or appearing in the video is not relevant to a determination of whether Defendant received or possessed the materials of which he is accused in this action. Defendant requests that no mention of these matters be made at trial.

///

///

ORDER RE: PRETRIAL MOTIONS - 17

The government responds that it does not intend to present evidence in its case in chief of a videotape in Defendant's possession of a minor girl sleeping. (Ct. Rec. 203 at 7). However, the government asserts Defendant's possession of any videos containing sexually explicit images of minors is admissible and relevant. The government also asserts that the videotape may be admissible for impeachment purposes if Defendant testifies in a manner inconsistent with prior statements regarding the videotape. (Ct. Rec. 203 at 7).

### B. Shocking Device

Defendant argues that disclosure of his alleged possession of an electrical handheld shocking device is inappropriate, because there is nothing illegal about ownership of such a device and there is no nexus between the device and any allegation in the current criminal action. Defendant contends its mention or introduction at trial would result in prejudice because it would suggest he is engaged in nefarious conduct and therefore apt to receive and possess child pornography.

The government responds that it does not intend to present evidence of Defendant's possession of a handheld electrical shocking device on January 28, 2006, unless this devise is pictured in any of the child pornography images Defendant possessed or is otherwise admissible for impeachment purposes. (Ct. Rec. 203 at 7-8).

### C. Criminal Record

Defendant asserts that any mention of his prior criminal record or the fact of his being found not guilty by reasons of insanity would be prejudicial and would violate Fed. R. Evid. 404(b). Defendant argues its mention would merely suggest that he is a flawed person

likely to have engaged in the illegal conduct alleged because he has a history of crime and mental deficiency.  (Ct. Rec. 192 at 4-5).

The government responds that it does not intend to present such evidence in its case in chief; however, the government wishes to reserve the right to seek to admit such evidence for impeachment purposes.  (Ct. Rec. 203 at 8).  The government specifically indicated, however, that it does not intend to present any Fed. R. Evid. 404(b) evidence at this time.  (Ct. Rec. 203 at 24).

Based on the foregoing, Defendant's motion in limine (Ct. Rec. 192) is denied without prejudice.

**X.  Motion in Limine (Ct. Rec. 195)**

Defendant also filed a motion in limine with respect to the government's handwriting expert, Peter J. Belcastro, Jr.  (Ct. Rec. 195).  Defendant argues that there is nothing definitive in Mr. Belcastro's education or training that qualifies him as an expert in handwriting comparison or analysis.  (Ct. Rec. 211).  Defendant contends that, under *Daubert* and Fed. R. Evid. 702, the introduction of any and all evidence concerning forensic testing, comparison and identification of handwritten documents or writings in this case should therefore be prohibited.  Defendant has requested a hearing on this motion.

"Federal Rule of Evidence 702 allows admission of 'scientific, technical, or other specialized knowledge' by a qualified expert if it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *Elsayed Mukhtar v. California State*

///

ORDER RE: PRETRIAL MOTIONS - 19

*University, Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002).[2]  Through

its decisions in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579,

589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993), *General Elec. Co.*

*v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 517, 139 L.Ed.2d 508

(1997), and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147, 119

S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999), the Supreme Court has

emphasized that Rule 702 imposes upon district judges a duty to screen

expert testimony to prevent unreliable evidence from reaching the

jury.  This duty, says the Supreme Court, is like that of a

"gatekeeper."  *See, e.g., Joiner*, 522 U.S. at 142, 118 S.Ct. at 517.

As the gatekeeper, a district judge must make a number of preliminary

determinations regarding the admissibility of proposed expert

testimony.  *See, United States v. Hankey*, 203 F.3d 1160, 1168 (9th

Cir.), *cert. denied*, 530 U.S. 1268, 120 S.Ct. 2733, 147 L.Ed.2d 995

(2000).  These include:

> Whether the opinion is based on scientific, technical, or other
> specialized knowledge;

> Whether the expert's opinion would assist the trier of fact in
> understanding the evidence or determining a fact in issue;

///

---

[2]As amended in 2000, Rule 702 states:

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence or
> to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Whether the expert has appropriate qualifications; i.e., some special knowledge, skill, experience, training or education on that subject matter;

Whether the testimony is relevant and reliable;

Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury to decide);

Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time.

*Id.* (citations omitted).

The Court having reviewed the motion, supporting information and response by the government, finds that a hearing is necessary for purposes of making a determination regarding the admissibility of the government's handwriting expert.  Unless the parties can agree to a video conference hearing sooner, a *Daubert* hearing with respect to the government's proposed handwriting expert, Peter J. Belcastro, Jr., shall be held on the first scheduled day of trial.

**XI.  Motion in Limine (Ct. Rec. 198)**

Defendant filed an additional motion in limine requesting that the government be precluded from displaying or showing to the jury any of the child pornography images which may exist.  (Ct. Rec. 198).

Defendant asserts that he anticipates stipulating or admitting that the various items of computer media contain images that are child pornography.  (Ct. Rec. 198).  In the event of such a stipulation, Defendant claims an issue of fact regarding the existence of child pornography no longer exists.  The issue of whether child pornography exists would no longer be in dispute; therefore, there would be no need for the presentation of such evidence.  Defendant further asserts that the only reason to present the images, assuming an admission that

ORDER RE: PRETRIAL MOTIONS - 21

they are in fact child pornography, would be to inflame the jury and appeal to the jury's passion and prejudice for the despicable nature of this illegal activity.  Defendant contends that any probative value of the images would be outweighed by the prejudice to Defendant.  Fed. R. Evid. 403.

The government responds that, even if Defendant stipulates to the images of child pornography, the government is still entitled to present evidence of the charges, possession and receipt of child pornography, to the jury in order to prove its case.  (Ct. Rec. 203 at 14-21).  The government indicates that there can be no doubt that jurors would be affected by viewing images of child pornography; however, the Court's voir dire to prospective jurors regarding the nature of the images could be structured to eliminate those jurors who would not be able to view such images without resultant prejudice to Defendant.

In *United States v. Sewell*, the Eighth Circuit found that the district court abused its discretion in accepting a defendant's offer to stipulate and forbidding the government from publishing a representative sample of images of child pornography to the jury. *United States v. Sewell*, 457 F.3d 841 (8th Cir. 2006).  The Northern District of Iowa also held that "[n]othing in the United States Code as amended by the Adam Walsh Act requires the government to accept a defendant's offer to stipulate that certain images are child pornography or states that the government may not prove its case by evidence of its own choice." *United States v. Johnson*, 456 F.Supp.2d 1016 (N.D. Iowa 2006).  The Tenth Circuit further held the district

ORDER RE: PRETRIAL MOTIONS - 22

court did not abuse its discretion by allowing a jury to view two pornographic images described in the indictment, despite a defendant's offer to stipulate that the images constituted child pornography. *United States v. Campos*, 221 F.3d 1143 (10th Cir. 2000).

Showing select images of child pornography will allow the jury to determine if the government met its burden of proof as to whether Defendant knowingly received or possessed an item or items of child pornography and whether at the time of such reception or possession Defendant believed that such item(s) constituted or contained child pornography. The government bears the burden of proving each element of the offense and publishing select images to the jury is the best method, short of Defendant's admission to all elements necessary for his conviction, for the government to prove its case.

Even assuming an admission by Defendant that the images are in fact child pornography, the government should not be prevented from showing a representative sample of images of child pornography to the jury to prove the elements of the offenses charged. Appropriate voir dire to prospective jurors' regarding their feelings and beliefs about the nature of such images will reduce or eliminate any prejudice that may result from showing the images to the jury. Accordingly, Defendant's motion in limine to prohibit showing any images of child pornography to the jury (Ct. Rec. 198) is denied.

**XII.  Government's Motion for Discovery (Ct. Rec. 209)**

On November 4, 2008, the government filed a request for Defendant to provide it with a written summary of its expert witness, Marcus Lawson (computer and forensic evidence expert). (Ct. Rec. 209). At

ORDER RE: PRETRIAL MOTIONS - 23

the pretrial conference, counsel for Defendant indicated he will comply with the government's request.  The government's motion for discovery (Ct. Rec. 209) is granted.

The Court being fully advised, **IT IS HEREBY ORDERED:**

1.  Defendant's motion to consolidate counts (**Ct. Rec. 178**) is **DENIED.**

2.  Defendant's motion to dismiss due to "Triple Jeopardy" (**Ct. Rec. 180; 82**) is **DENIED.**

3.  Defendant's motion in Limine (**Ct. Rec. 182; 97**) is **GRANTED.**

4.  Defendant's motion to instruct jury regarding tribal court conviction (**Ct. Rec. 184; 94**) is **DENIED.**

5.  Defendant's motion for jury to view Defendant's leg and knee scars (**Ct. Rec. 186; 98**) is **DENIED, with leave to renew.**

6.  Defendant's motion for discovery (**Ct. Rec. 188**) is **GRANTED in part and DENIED in part**.  The government shall disclose a list of witnesses whom the government expects to call in its case in chief **ten (10) days** prior to trial.  Defendant's request for the reports of the government's handwriting expert is denied as moot.

7.  Defendant's motion to admit verbatim transcripts of prior trials (**Ct. Rec. 190; 96**) is **DENIED in part**.  Such transcripts may be used at trial for impeachment purposes.

8.  Defendant's motion in limine (**Ct. Rec. 192**) is **DENIED, with leave to renew**.

9.  Defendant's motion in limine to prohibit showing any images of child pornography to the jury (**Ct. Rec. 198**) is **DENIED.**

///

ORDER RE: PRETRIAL MOTIONS - 24

10.   The government's motion for the report of Defendant's expert witness (**Ct. Rec. 209**) is **GRANTED.**

11.   Unless the parties can agree to a video conference hearing sooner, a *Daubert* hearing with respect to the government's proposed handwriting expert, Peter J. Belcastro, Jr., shall be held on the first scheduled day of trial.

**IT IS SO ORDERED.**   The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this   20th   day of November, 2008.

S/Fred Van Sickle
_____
Fred Van Sickle
Senior United States District Judge

ORDER RE: PRETRIAL MOTIONS - 25